Ellenwood *v.* Fults.

---

## PHILO C. ELLENWOOD *vs.* DAVID FULTS.

In an action upon a lost note, the plaintiff, himself, testified, on the trial, that he let the makers take and show the note to a neighbor, to see if an indorsement thereon was right; that they were gone some time, and one of them returned in about three hours, and said he had lost the note; and the witness testified that he had not seen it since. *Held* that on this evidence, it was fair to infer that the maker who consulted a neighbor as to the validity of the indorsement, acted not only for himself, but for the other maker; and that the statement made by him on his return, was admissible against the other maker, and the jury might find, upon that evidence, that the note was lost.

A note for $500 was given to the plaintiff by the defendant and his son C., in part payment for a scow, purchased by C. of the plaintiff. When it matured, C. had sold the scow to H. and taken a personal mortgage conditioned to

pay the note. It was then agreed between the plaintiff and C., subject to the defendant's approval, that if C. and the defendant would give a new note for one half the amount due upon the old, and procure a release from H. of all claims against the scow, and one half of all other claims, the plaintiff would pay one half of all such claims, other than those of H., take back the scow and surrender the $500 note. This being communicated to the defendant, was assented to by him, with this qualification; that the defendant should guaranty the new note for one half the amount of the $500 note, and sign an agreement in relation to the payment of the claims on the scow. The new note was drawn by the plaintiff and signed by C., and a guaranty not expressing any consideration was signed by the defendant, and an agreement made, by him, to pay charges against the scow; and the plaintiff indorsed the amount of the new note on the $500 note.

*Held,* 1. That the new agreement was substituted for the old note; and if the defendant had fulfilled that agreement, on his part, he was relieved from liability on the $500 note. That if he had not, then he was liable, upon the new agreement, for whatever damages the plaintiff had sustained thereby. And that it was only in the contingency that the defendant broke this contract that the plaintiff could be remitted to his remedy on the $500 note.

2. That giving the agreement to pay the charges on the scow was a performance of the clause of the new contract in relation thereto.

3. That the plaintiff was entitled, under the contract, to a valid guaranty of the new note; and the defendant was not released from liability if the plaintiff, through mistake, failed to draw a guaranty binding in law.

4. That the fair construction of the contract being that the defendant should not only sign a guaranty, but one that could be enforced in law against him, the only effect that the plaintiff's mistake could have would be to excuse the defendant from liability for a breach of contract, until demand was made upon him to execute a valid one, and refusal to comply.

5. That the defendant being a joint debtor with C. upon the $500 note, when negotiations were entered into to pay that debt, they were entered into to pay his own debt, and not the debt of another. And the defendant being thus legally liable, before signing the guaranty, for the whole debt, he was therefore guarantying his own debt, and not the debt of another person. And the guaranty was valid and binding, although it expressed no consideration.

6. That from the plaintiff's omission, throughout the trial, to allege that the scow had not been returned to his possession, and from the allegation of a breach of another and different clause of the contract, the court was bound to consider the case as if a delivery of the scow to the plaintiff had been proved.

7. That the plaintiff, having received and retained a part of the consideration of his promise to release the defendant from the $500 note, he could not keep it and still recover the whole amount of such note.

8. That he was entitled to recover only so much as he had lost through the default of the defendant to fulfill his part of the agreement. And that was limited to the new note; all the rest having been performed. That that note, and the interest thereon, formed the measure of damages.

APPEAL, by the defendant, from a judgment entered at a special term, on the verdict of a jury.

The complaint was on a promissory note for $500, alleged to have been made by the defendant and his son Chauncey Fults, to the plaintiff, dated April 24, 1860, at 19 months; due November 24, 1861. The note was alleged to be lost. The answer denied the making of the note, &c., and alleged settlement and discharge. The son Chauncey had assumed to sign the defendant's name to the note in question, to secure the plaintiff for part of the purchase money of a scow bought of him; part being paid down, and a mortgage given for the balance, the amount of the note. Chauncey had sold the scow to one Holdridge, who gave a mortgage by which he was to pay the $500 note. The defendant denied the authority of the son to sign his name to the note; and the plaintiff gave evidence that he acknowledged he gave such authority, and the defendant to the contrary. Prior to August 27, 1861, Chauncey had arranged with the plaintiff to take back the boat and indorse the note down one half, on being indemnified against certain claims on the boat. On that day the parties met, the matter was discussed, and the arrangement finally made, the note indorsed down and agreement perfected, except that Chauncey took the note to carry to a neighbor's to see if the indorsement was right. He afterwards returned saying he had lost it; when it was arranged that a new note should be made for one half the amount of it with the defendant's guaranty, and his guaranty against the aforesaid claims. And so the note and guaranty was given, and the business closed.

The guaranty not expressing any value, the plaintiff

afterwards called on the defendant to insert it, which he refused. Thereupon this action was brought.

On the trial, before the plaintiff rested, he produced to the court a bond in due form, such as is customary in the case of a lost note, with a surety which was approved by the justice holding the court, by indorsement thereon, and filed by the clerk; and which remains on file for the security of the defendant.

At the close of the plaintiff's evidence, the defendant moved the court to nonsuit the plaintiff on the following grounds:

"1. That there is no sufficient proof of the loss of the note in question.

2. That the note was extinguished by the new agreement between the parties of the 27th August, 1861, and the surrender of the vessel, and the only claim of the plaintiff, if he had any, was for the amount of the new note, and the action, if any, must be thereon. That if the note was ever valid against the defendant, the new agreement and guaranty were valid against him.

3. That if that note had a valid existence and was lost, the plaintiff could not maintain the action, without first tendering the bond required by the statute, which must be preliminary to the commencement of the action. The court overruled the motion and the defendant excepted to the decision.

The court charged the jury, 1. That if they believed that David Fults gave Chauncey Fults authority to sign the note, or subsequently recognized it as an existing obligation against him, he would be liable upon it as upon an original signature by himself. The defendant excepted. 2. The obligation of this note could be discharged by an agreement of the parties evidenced by instruments valid in law, and capable of enforcement against both defendants. The agreement made by the parties in August, 1861, necessarily implied that the instruments to be given

should be valid instruments capable of legal enforcement against the parties. 3. The guaranty of the note and the accompanying agreement were not legally enforceable against David Fults, but, as to him, were without a consideration and void. (To this the defendant excepted.) And the fact that the papers were drawn by the plaintiff, does not, under the circumstances existing in the case, estop him from averring their invalidity. To this the defendant excepted. 4. The consequence was, that the liability of the defendant upon the $500 note was revived, and the plaintiff was entitled to recover upon it, upon offering and tendering to the defendant the note with the guaranty and accompanying agreement, and placing them at his disposal. To this the defendant excepted. And if the jury should find that such offer and tender were made before the commencement of the action, the plaintiff had performed that condition and was entitled to recover the amount of the note, $500, and interest, amounting to $574.08. To this the defendant excepted.

The defendant requested the court to charge that if the $500 note was genuine, the plaintiff agreed to take the new note and guaranty, and the agreement, and give up the old note, on a sufficient consideration; the defendant was bound by it; that was a valid agreement, and the old note discharged, or at least reduced one half, and the credit extended to the maturity of the new note. The court refused so to charge, and the defendant excepted. Also that the amount was, by the transaction, reduced one half and the plaintiff could recover no more. The jury found for the plaintiff for the whole amount of the note.

*W. C. Thompson*, for the appellant.

I. There was no evidence against this defendant of the loss of the note. As to Chauncey, his confession might bind him, but not the defendant. If it can be said that he acted on that assumption, it does not prove the fact.

He could not have had it; .and when the loss is called in question, it must be proved.

II. If the defendant did not authorize his son to sign his name to the note—in other words, if it was a forgery—there is no element of recognition in the case to bind him. It was or was not a forgery; and that was the question. If it was a forgery, then there was no consideration for any promise .growing out of it. The only case in which any liability can grow out of an unauthorized using of one's name, is where it is repeatedly .allowed without question, and therefore grown into an agency implied; or becomes the ground of an estoppel. No such element exists here. And, so far as this case is concerned, the only question was, whether authority was given, or not. Hence that part of the charge, which says that if the defendant recognized the note as a subsisting obligation, he would be liable upon it, was erroneous.

III. If there was a valid note, the defendant became the debtor of the plaintiff, even if he was surety for his son, of which, however, there is not one word of proof; and without it, he was a principal debtor. In fact the plaintiff has nothing to do with the question of surety, as between the makers of the note. It is the defendant's note to pay; and hence the guaranty was that of his own debt, and did not need words of consideration, either in that, on the note, or in the agreement against claims. It needed no written guaranty whatever, any more than did the old note indorsed down. The plaintiff agreed to take the boat and allow so much, and the defendant agreed, in consideration thereof, to pay the balance, and free it from claims. The boat was thereby given up, and the plaintiff accepted and has got it. (*Barker* v. *Bucklin*, 2 *Denio*, 45, 57. *Brown* v. *Curtiss*, 2 *Comst.* 225. *Durham* v. *Manrow*, *Id.* 533. *Hall* v. *Farmer*, *Id.* 553. *Partridge* v. *Colby*, 19 *Barb.* 248.) And even were he, as between himself and son, a surety conceded and in form, it is the same thing

to the plaintiff; an oral promise to pay it will bind him. (*Rexford* v. *Brunell,* 1 *N. Y. Legal Obs.* 396.) In short, the case proceeds on the ground that a man cannot bind himself by a verbal promise to pay his own note. It is enough, however, to say, that neither the plaintiff nor defendant alleged any suretyship. The defendant said he did not make the note, and the plaintiff said he did, and proved it. This is all of suretyship there is in the case. (21 *N. Y.* 336.)

IV. The plaintiff having accepted the new note on a good consideration, and at longer time than the old one, the old one is extinguished.

V. If not extinguished, the plaintiff can only recover the one half. The plaintiff agreed to take back the vessel, and allow one half the note for it, in consideration that the defendant would agree to pay certain claims upon it. The defendant agreed to it; the agreement to do so was binding, though oral. It was an executed agreement on both sides, and the debt therefore reduced one half. The giving of the new note and guaranty did not make it the less an executed agreement, or destroy the effect of the indorsement.

VI. If the plaintiff can be allowed to repudiate it, it can be only on terms of placing the parties where they were, by returning the boat. If the defendant was in fact surety, he would have the right to be subrogated to the plaintiff's lien. As it now stands, the defendant is made to pay for the boat and lose it besides.

*F. W. Hubbard,* for the respondent.

I. The evidence of the loss of the note was sufficient. The arrangement of the 27th of August, 1861, proceeded on the theory of the loss; all parties acted on that supposition.

II. The bond to indemnify against the lost note was given on the trial, and approved by the court. This was

sufficient, under the statute. (2 *R. S.* 691, §§ 106, 108, *5th ed.*) It is not necessary that it should be given before suit. The bond is to be approved by the court in which the trial shall be had. (*Des Arts* v. *Leggett*, 5 *Duer*, 156.) The party has the right to require the indemnity before payment, but he may waive it and obtain it on the trial. He may, perhaps, require it at the commencement of the suit; if he does not, he waives it till the trial. The statute simply requires indemnity before recovery.

III. The evidence was sufficient of the execution of the note by the defendant, or that he gave Chauncey Fults authority to sign it for him. The plaintiff took the note on the representation of the defendant, that he gave or authorized the note. The defendant subsequently recognized the note.

IV. The agreement by which the $500 note was to be relinquished, was that Chauncey should give a new note for $273.97 and pay off certain claims on the scow. The defendant's undertaking was to guaranty the payment of that note, and that Chauncey would discharge the liens on the same. The defendant, although in form a maker, was merely a surety for his son on the $500 note. His agreement necessarily implied that the guaranties should be valid on their face, legally enforceable as such, without resort to extraneous proof. They were not such, because not expressing a consideration. The arrangement was not, therefore, perfected, and the defendant refusing to perfect it by supplying the defect in the guaranties, the plaintiff has a right to resort to the original note.

V. The defendant practiced a fraud on the plaintiff. He knew that the guaranties, when made, were invalid. He knew that the plaintiff was ignorant of the fact. Common honesty demanded that he should have informed the plaintiff and removed his misapprehension.

VI. The guaranties are within the statute of frauds, and void. The relation between the defendant and Chauncey

Ellenwood *v.* Fults.

Fults was that of principal and surety.    This was the form
of the relation, under the agreement of the 27th of August,
1861, and was the substance of the relation under the old
note.    Chauncey was the principal debtor of the plaintiff.
This was known to all parties.

VII. The guaranties were not legally enforceable as
such.    The case of *Brewster* v. *Silence* (4 *Seld.* 207) is
directly in point, and also holds that parol evidence is not
admissible to supply a consideration.    It also holds that a
consideration cannot be found in the fact that the guaranty
is made at the same time and on the same paper as the
original note, and that it formed an essential ground of
the credit given to the principal debtor; that the writings
cannot be read together as one instrument, for the reason
that they are different and distinct contracts.    (*Church* v.
*Brown*, 29 *Barb.* 486.)    It is submitted that a guaranty
is within the statute, provided the relation of principal
and surety exists, and the liability is sought to be pred-
icated on that relation.    There is a class of cases where a
consideration, in fact, is shown to sustain a liability, but
in all such it is founded on a liability as an original debtor.
(*Brown* v. *Curtiss*, 2 *Comst.* 229.  *Barker* v. *Bucklin*, 2 *Denio*,
45.)    The consideration finds its root in a matter distinct
from the liability of the principal debtor.    In this case
there was no such consideration; the old debt belonged
to Chauncey to pay; and in no just sense can it be said
that the new arrangement was a method by which the de-
fendant paid his own debt, or became a principal debtor.

VIII. It is, however, insisted that the question of the
statute of frauds is not involved in this appeal.    As before
observed, the arrangement by which the plaintiff agreed
to give up the $500 note, was not executed.    That arrange-
ment, as the justice at circuit held, necessarily implied a
valid guaranty on the part of the defendant; and we say
further, it necessarily implied that it should be valid on
its face, and enforceable as a guaranty of the debt of

Chauncey without resort to proof *aliunde*. This guaranty not being of that character, the consideration for the plaintiff's promise failed, and he did not lose his remedy on the original note.

IX. The agreement to relinquish the $500 note having never been executed, the plaintiff was entitled to recover the whole amount of that note. There is no ground for holding that he is limited in his recovery to the one half. No part of the agreement made on the 27th of August was executed. A valid guaranty was not made; nor was the vessel taken back by the plaintiff, or liens on it paid. Substantially, the parties stand in the position they did before the agreement was made.

*By the Court*, MULLIN, J. There was a conflict of evidence as to whether or not the defendant ratified the act of his son in signing his (the defendant's) name to the $500 note, and the finding on that question must be held conclusive.

The defendant moved for a nonsuit, on the ground that there was no sufficient proof of the loss of the note. The court denied the motion, and the defendant's counsel now insists that the judge erred in denying the motion. The loss of the note is alleged in the complaint and denied in the answer. The plaintiff was therefore apprised that he must prove the loss by legal evidence. To prove the loss, the plaintiff himself testified that he let them (the defendant and his son Chauncey meaning) take and show the note (the $500 note) to a neighbor to see if the indorsement (of one half the amount due thereon) was right. "I let Chauncey have the note; they were gone some time, and Chauncey returned in about three hours and said he had lost the note, and I have not seen it since." This is all the evidence in regard to the loss, at the time the plaintiff rested. It is the declaration of Chauncey, and as a general rule his declarations would not be evidence against

the defendant. But it will be seen that Chauncey and David were both participants in the proceedings to effect a settlement of the $500 note. They were both parties to that note, and interested in the settlement—particularly in having it indorsed down so as to protect *them;* Chauncey and David have the note to take to a neighbor to see if the indorsement was right. " They were gone," he further says, and Chauncey returned, &c. It seems to me that on this evidence it is fair to infer that Chauncey acted, in consulting a neighbor as to the validity of the indorsement, not only for himself but as agent for the defendant, and that his statement on his return was admissible against the defendant. And the jury might find, on this evidence, that the note was lost. The defendant himself, when examined in his own behalf, swears to the same statement of his son, as to the loss. I think the learned justice rightly refused to nonsuit the plaintiff on this ground.

This brings us to the principal question in the case; whether the $500 note was satisfied by the new agreement made on the 27th of August, 1861.

The $500 note was given in part payment for a scow purchased by Chauncey Fults of the plaintiff. That note was dated on or about the 24th of April, 1860, and payable with interest 19 months from its date. The note matured in November, 1861. Chauncey had sold the scow to the Holdridges and taken from them a personal mortgage conditioned to pay the $500 note. The plaintiff, for some reason, became uneasy in regard to his note, and desired some new arrangement as to it. Negotiations were consequently had with Chauncey in which, it would seem, it was agreed between them, subject to the defendant's approval, that if Chauncey and the defendant would give a new note for one half the amount due upon the old, procure a release from the Holdridges of all claims against said scow, and one half of all other claims, the plaintiff would pay the other half of all such claims other

than those of the Holdridges, take back the scow and sur-
render the $500 note. This proposition was communi-
cated to the defendant and assented to by him; the only
variation in the arrangement being that the defendant was
to guaranty the note for one half the $500 note, and sign
an agreement in relation to the payment of the claims on
the vessel. The new note was drawn by the plaintiff and
signed by Chauncey and a guaranty thereof signed by the
defendant, and an agreement made to pay charges against
the scow; the plaintiff indorsed the amount of the new
note on the $500 note, and left. Strough, a witness on
behalf of the defendant, says that after these things were
done the plaintiff declared himself satisfied. To complete
this arrangement it was of course necessary that the scow
should be given up to the plaintiff, and neither then nor
subsequently was any complaint made by the plaintiff
that the scow had not been delivered. The plaintiff, on
the trial, is silent on the subject, and it therefore seems to
me that we must assume, for the purposes of this case,
that the scow was delivered. The plaintiff proves the
new agreement, testifies as to performance by the parties,
and it was only in the contingency that the defendant
broke this contract that the plaintiff could be remitted to
his remedy on the $500 note. Proof of a breach by the
defendant was a part of his case. The breach relied on
is the invalidity of the guaranty of the new note, not the
non-delivery of the scow. From the omission, throughout
the trial, to allege that the scow was not returned to the
possession of the plaintiff, and the allegation of a breach
of another and different clause of the contract, I think we
are bound to consider the case as if a delivery of the scow
to the plaintiff had been proved.

The defendant performed his part of the new agree-
ment, when he signed the new agreement to pay the
charges against the scow, and surrendered her to the plain-
tiff, except giving a valid guaranty of the new note, if it

Ellenwood *v.* Fults.

be true that the one given is not, in law, binding upon him.

Before proceeding to examine that question, let us ascertain whether it was the intention of the parties that the note signed and guarantied, and the scow delivered up, the agreement to pay the charges on her, executed by the defendant and delivered to the plaintiff, constituted full performance on the part of the defendant; or whether the $500 note was not to be deemed paid until the charges were in fact paid, in addition to the performance of the other considerations of the contract. The payment of these charges was demanded by Moon at the time he called on the defendant before suit was brought, and hence I infer that the giving of an agreement to pay was not deemed to be a performance of the contract.

No such position can be maintained. When the acts above enumerated were done by the defendant, they were accepted as performance of the contract. The plaintiff says the $500 note was to be held to the extent of one half of its amount till the charges on the scow were paid. In this I think he is mistaken. The one half of the note would be no more available to him than the agreement required by the defendant to pay the charges, and no other witness testified to any such provision. Again; it seems that during the negotiation it was proposed to indorse the old note down to one half its amount, and to let the other half remain available to the defendant, instead of taking a new note. But the plaintiff was not satisfied with the old note, by reason of the doubt as to its being binding on the defendant, and hence the new note for the one half was given. And according to the testimony of Strough, it was after the loss of the old note, and the consequent discharge of the defendant from liability thereon, as the plaintiff then supposed, that upon the completion of the new arrangement, he expressed himself satisfied therewith.

It seems to me, therefore, that the new agreement was

substituted for the old note, and that if the defendant has, in law, fulfilled that contract on his part, he is relieved from liability on the $500 note; and if he has not, then he is liable upon the new agreement for whatever damages the plaintiff has sustained thereby. And I repeat, that giving the agreement to pay the charges on the scow, was a performance of the clause of the new contract in relation thereto.

The plaintiff was entitled, under his contract, to a valid guaranty of the new note; and the defendant is not released from liability if the plaintiff, through mistake, failed to draw a guaranty binding in law.

The fair construction of the contract is, that the defendant should not only sign a guaranty, but one that could be enforced in law against him. The only effect that the plaintiff's mistake could have, would be to excuse the defendant from liability for a breach of contract, until demand was made upon him to execute a valid one, and refusal to comply.

Is the guaranty, in law, binding on the defendant?

In considering this branch of the case, it must be assumed, on the finding of the jury, that the defendant did execute, and was liable upon, the $500 note. As between the plaintiff and defendant, the latter was indebted to the former in the amount of the note. It was the debt of the defendant as well as of his son Chauncey. It is true the defendant was a mere surety, as between himself and his son. But the defendant's relation to the plaintiff was not affected thereby. He was a joint and several debtor with his son upon that note.

When negotiations were entered into to pay that debt they were entered into to pay his own debt, and not the debt of another. The cases of Brewster v. Silence, (4 Seld. 207,) Church v. Brown, (29 Barb. 486,) and divers other kindred cases referred to by the counsel, have no application to this case. In those cases the defendants were in no way responsible for the debt until they signed their

respective contracts of guaranty. In this case the defendant was legally liable, before signing the guaranty, for the whole debt, and was therefore guarantying his own debt, and not the debt of another. *Brown* v. *Curtiss* (2 *Comst.* 225) lays down the rule which governs this class of cases; and until the doctrine of that case is overruled, this guaranty must be held valid and binding.

But if we are wrong in this, still the judgment in this case could not be sustained. The plaintiff had received and retained a part of the consideration of his promise to release the defendant from the $500 note. He could not keep it and still recover the whole amount of the note. He was entitled to recover only so much as he lost through the default of the defendant to fulfill his part of the agreement. That was limited to the new note; all the rest had been performed. That note and its interest formed the measure of damages.

I am of the opinion that two of the defendant's exceptions to the judge's charge were well taken, and the judgment should be reversed, and a new trial granted; costs to abide the event.

[Oswego General Term, July 14, 1863. *Allen, Mullin, Morgan* and *Bacon*, Justices.]